## HUBBARD *et al. v.* SULLIVAN *et al.*

ASSUMING that the title to the lot in San Francisco on which the United States Marine Hospital stands was in said city at the time of the passage of the Van Ness Ordinance, then a deed in 1852 by the Mayor of said city, in pursuance of an order of the Common Council thereof, conveying said lot to the United States, was effectual·as a license from the city to the United States to enter upon and hold the lot, even if the deed was not operative to pass the title.

Assuming that this deed did not pass the title to the United States, then by and upon the passage of the Van Ness Ordinance of 1855 and the Act of 1858 confirming it, the United States, holding the lot under the city through this deed as a license, and having actual possession, may be considered as in possession for the city, and entitled to protection against the antecedent possession of the plaintiff or his predecessor.

The proviso in the Van Ness Ordinance:—"Provided such possession has been continued up to the time of the introduction of the Ordinance; or, if interrupted by an intruder or trespasser, has been or may be recovered by legal process"—only determines the right under the ordinance as between the actual possessor and a former possessor whom the first had deforced, and does.not apply to the case of the city resuming possession of her own property, or what is the same thing, a possession held by her license and permission, and does not operate to exclude her from her rights, and to deny her the benefits of her present lawful possession from the mere fact that a long while before the passage of the ordinance some· one else was in unlawful possession of her property, and was put out unlawfully by a· succeeding trespasser having no better title.

Whether the United States got any title by the deed from the city—that is, whether the city could convey her real estate by way of gift, or whether the Van Ness Ordinance operated in this case in favor of the United States, not decided.

This Court is bound to decide according to the law of the whole case, and not upon the particular points raised by counsel.

If, as plaintiff contends in this case, the Act of 1851 passed the title of the lot on which the Marine Hospital in San Francisco stands to the Commissioners of the Funded Debt, then plaintiff cannot maintain his action, because, even con-

ceding that the Legislature had power to divest this title by the Act of 1858 confirming the Van Ness Ordinance, still that Ordinance and that Act only give the occupants the right, title and interest of the city in the land so held.

*Semble,* that the deed to the Commissioners of the Funded Debt of San Francisco under the Act of 1851, for the payment of the city debts, is a conveyance in trust for the purposes for which it was executed, leaving the residuary interest, after satisfying or discharging the trust, in the city, and that, subject to this right of the Commissioners—supposing it to exist—the city could still, without objection from third persons, control the subject of the trust.

Plaintiff here, claiming, through the Van Ness Ordinance, the right and title of the city, is not in a position to say that the city had, at the time of the passage of the ordinance, no title or claim to the premises.

APPEAL from the Twelfth District.

Ejectment for a lot in San Francisco on which the United States Marine Hospital stands. The complaint is in the usual form, averring title in fee simple on and since August 21st, 1860, and stating defendants' entry on that day.

The answer denies the allegations of the complaint, and sets up title in the United States prior to and ever since the twenty-first of August, 1860, and avers defendants are merely agents and employés of the Government. Replication denying the matter set up in the answer.

Plaintiffs claim, so far as possession goes, under one White, who in October, 1849, settled upon a tract of land east of Beale street, in San Francisco and embracing the premises in dispute, built a house and lived there with his family until about the fall of 1851. Plaintiffs claimed on the trial, and introduced witnesses who testified, that White, in 1849, erected a fence running north along the easterly line of Beale street across Rincon Point, from shore to shore, and claimed all the land east of this fence; that his house was within these boundaries (and of this there was no dispute); that the various other persons living on the premises were tenants of White's, etc. It was proven that White did, up to the fall of 1850, lease different portions of the tract to various persons. On the other hand, defendants introduced witnesses to show that there was no fence extending clear across, or even nearly across, the tract; that within the boundaries claimed by plaintiffs as possessed by White, various persons were living in 1849 and 1850 who held

adversely to him; that in 1850, United States officers, acting in behalf of the Government, tore down many of the houses and tents on the premises—White's among them—and claimed the land to belong to the Government Reserves.

White, in May, 1850, had a tract, embracing the premises and containing about twenty-five acres, surveyed, and then filed in the County Recorder's office his claim to said tract under the preëmption laws of the United States.

On the 10th of October, 1851, White conveyed the premises described in the preëmption claim before named, by deed, to Hubbard, one of the plaintiffs, and Templeton; and they, on the 7th of January following, sold to Wilson, also plaintiff, a quarter interest. Templeton, January 7th, 1852, deeded his interest to Hubbard, and left. After White's sale to Hubbard and Templeton, he gave up to them whatever possession he had.

July 27th, 1860, Hubbard deeded to Wakeman one-third of the tract conveyed by White to Hubbard and Templeton, and Wakeman, on the twenty-third of August, 1860, conveyed the same by deed to Woodyard, who on the same day conveyed by deed of gift to Mary E. Wakeman, one of the plaintiffs.

In December, 1852, the United States took possession of the lot on which the Marine Hospital now stands, and began the erection of the building, and have ever since held possession. At the time of so taking possession there were several persons, with their houses, on part of the lot, some of whom, of their own accord, yielded their possession, while the houses of others were removed by the contractor for the erection of the building; of the houses removed, some were on the spot where the building stands, and others adjoining. Some of the land so adjoining was leased of the contractor, as he could not otherwise get possession. The evidence does not show whether there was any privity between plaintiffs and the persons so removed.

The proceedings of the city of San Francisco for the confirmation of her claim to the pueblo lands were put in evidence.

Defendants, among other matter, offered in evidence an Ordinance of the Common Council of said city, passed December 10th, 1852, directing the Mayor to convey to the United States all the

right and interest of the city to six fifty-vara lots, which includes the premises in dispute.    Plaintiffs objected on the ground of irrelevancy, and that the Common Council had no power to sell the lands of the city, except at public auction, and that at the time of the passage of the ordinance the title of the property was vested in the Commissioners of the Sinking Fund. · Overruled; plaintiffs excepting.

Defendants then offered in evidence a deed, dated December 11th, 1852, by the Mayor, in pursuance of the ordinance.    Objected to, on the ground that the charter of the city gave no power to sell her lands, except at public auction.    Overruled; plaintiffs excepting.

.   Further statement of the evidence is unnecessary.

The Court charged the jury, among other things, as follows:

" Plaintiffs claim by title, evidenced by the fact of prior possession in White, which they allege they have proved.    The plaintiffs also gave in evidence a paper signed by White, under whom they claim, recorded thirtieth May, 1850, in which White asserts that the lands were unoccupied, and were public lands within the corporate limits of the city of San Francisco, and that he claims them under and by virtue of the laws of the United States, and of this State.    Prior possession and occupation of land is sufficient *prima facie* proof of title, when such possession has never been abandoned, to enable a plaintiff in ejectment to recover against a mere trespasser who had entered upon such possession without title. But that possession may be destroyed as evidence of title, by acts of the party or by his statements, showing that he claims that the land actually belongs to another and is not his own, if they are so plain and decisive as to rebut the presumption of title arising from the fact of prior possession.

" I instruct you, then, as matter of law for your guidance, that this declaration of White's negatives, rebuts and destroys any presumption of title in him, which might and otherwise would have arisen from any actual prior possession and occupancy by White, and on this ground instruct you that the plaintiff has not only failed to prove title, assuming for the purposes of this part of the case that he had possession in fact, but has proved that he had not such title

by possession as will enable him to recover in this action, and that you find for the defendants. At the same time, as this case is one of great importance, and it may be well to obtain the decision of the Supreme Court on as many of the points involved in it as possible, I have framed particular questions of fact on which you will pass, and give in a written finding."

The Court then read the first question to the jury, as follows:

"1st. Was Thomas White, or were J. C. Hubbard and Horace Templeton, or either of these two last, and if but one, then which of them, in the actual possession of the lands in controversy in this suit prior to the possession taken by the United States at the time of making preparations to build the Marine Hospital?

"The 'actual possession' named in this question is an actual *bona fide* occupation and possession. The land must be subject to the will and control of the party and to his use—not necessary to be all used, but it must be subject to be used as required. It is not requisite that the whole land should be fenced around. A fence erected with or without bars, across a peninsula, forming one line, if you find it to have been built, with the water around the other parts of the land, forming a natural boundary, would be a sufficient designation and marking of the boundaries to evidence the extent of possession, provided the party had or took possession of the lands within these boundaries. The character of the acts or improvements required to constitute such a reduction to the use and control of the party depends on the locality. It is not necessary that it should be all cultivated. If living on it, with this fence and the natural boundaries, in possession of part, and the rest not in prior occupation of others, this is good possession of the whole. Renting the land is evidence of the direct reduction to the use of the party, and the possession of a tenant under a written or verbal lease is the actual possession of the landlord of the land so rented.

"It is requisite that such possession should have been exclusive at some time—that is, that the land should not have been the subject of a scrambling contest between White and others acting adversely to him, and also claiming the land and exercising acts of ownership over it, or over such parts as each could from time to time reduce into his actual possession. In such case, only such

parts of the land as were actually reduced into first possession, out of the common mass of land, by fence, cultivation or building on, or other actual possession, occupation and subjection, or their uses would be deemed as in the possession of the party.

"I have said that the possession must be exclusive. It would be good possession, and exclusive, if the party was residing on and in exclusive possession by fence and the natural water boundary for any time, however short, claiming the whole, and that possession would not be destroyed by other parties without title afterwards intruding upon and refusing to recognize his right or possession; such parties would be trespassers.

"If at the time White erected the fence across the peninsula— if you find that he did at any time so erect it—there were other parties living on the land or any part of it, and in the actual occupation of any part or parts of it, those persons would be, as to such part or parts so occupied by them, the prior possessors, and White could not, by building a fence outside of them, deprive them of their rights and possession. At the same time, he (White) would then, if you find the fence as I have said, acquire possession of all not thus in the actual possession of others."

The Court then read to the jury the second question, as follows:

"Secondly—If you find White so to have been in possession, then did he ever at any time between so first being in possession and the tenth day of October, 1851, abandon the same? If you find that Hubbard and Templeton ever were so in possession, did they between the tenth day of October, 1851, and the seventh day of January, 1852, abandon said land, or did Hubbard and M. D. Wilson between the seventh of January, 1852, and the twenty-seventh of July, 1860, abandon said land? If you find that any of them did so abandon, state the party or parties and the time when. Or did the plaintiffs, between the twenty-seventh of July, 1860, and the twenty-fifth of August, 1860, abandon the land.

"A party leaving the possession of land, with the intent not to return to or further claim it as his property, abandons the land.

"In deciding this question, you will consider the whole evidence in the case, and the acts and conduct of the parties bearing upon it.

"This abandonment may be proved by any single act which sat-

Hubbard *v.* Sullivan.

isfies you of the fact of leaving with the intent not to return to the possession or further use of it, or by a series of acts extending over days, months or years. The intent may not be formed at the moment of leaving the land; it may be formed after he left. If the party goes or is out of possession, and at the time of going out, or while out, forms the intent not to return or resume possession, it is an abandonment. A mere going out for some temporary object, without the intent not to return, is not an abandonment.

"After thus once abandoning, he cannot change his mind and say he will come in again on some change of circumstances; his prior possession is then gone. It is claimed here that the plaintiffs and those through whom they claimed refrained from asserting their rights in consequence of an early decision of the Supreme Court, in what is called the Peter Smith case, and that this would not prevent them from asserting their rights on a more recent and more correct statement of the law involved in these cases. I instruct you that if a party under a mistake of law abandons the land to which he has no title but possession, the intention and the act combining for one moment, he will be held to have abandoned, even although he did so in ignorance of the law.

"If you are satisfied on the evidence that the fact and the intent clearly combined for any time, however short, you will find this question in the affirmative, and designate the parties and the time. If you are satisfied they did not, you will find in the negative."

## DEFENDANTS' INSTRUCTIONS.

The Court, upon the request of the counsel for the defendants, then instructed the jury as follows:

"1st. That by intendment of law, the clause respecting the Marine Hospital contained in the Act of Congress of September 30th, 1850, reserves from the operation of the Act of March 3d, 1851, such lots as were designated by the Secretary of the Treasury under the aforesaid Act of 1850, the two statutes being construed together as being *in pari materia*.

"2d. That the United States having been in actual possession on and before the first of January, 1855, the Van Ness Ordinance and its ratification by legislative act vested in the United States all right the city may have had.

" 3d. That the State Legislature having given their consent to the purchase of lands by the United States for public purposes, the city having made the conveyance of December 11th, 1852, and the United States being ever afterwards, and on the first of January, 1855, in notorious occupancy and possession, the city ordinance of June 20th, 1855, and the act of the Legislature of March 11th, 1858, must be held in law to have contemplated and intended the confirmation of the United States title to these lands."

To which instructions plaintiffs excepted.

## PLAINTIFFS' INSTRUCTIONS.

Plaintiffs requested the Court to instruct the jury as follows:

" 1st. If the jury believe that Thomas White, the original vendor of the plaintiffs, in the latter half of the year 1849, entered upon the land bounded by Beale street and the water, claiming to hold or own the same by his possessory right ;

" That a few months thereafter he caused to be erected and completed a fence running along the westerly line of his claim, which, together with the water, distinctly marked the boundaries thereof ;

" That he caused to be made in the month of May, 1850, a survey and map of said claim, and on the thirtieth day of May, 1850, filed a written assertion of his claim with the Recorder of San Francisco ;

" That prior to the month of May, 1850, he had erected a dwelling-house within the boundaries of his claim, in which he resided with his wife, and continued to reside until he sold the land to Hubbard and Templeton, in the fall of 1851 ; and also a store-house, or outhouses, which he erected for the transaction of his business ;

" That during his whole residence thereupon he claimed the entire tract as his own, and exercised acts of ownership over various portions thereof, such as selling, leasing, subdividing, etc.;

" That upon the sale to Hubbard and Templeton he put them in possession of his dwelling and store-house, and transferred to them the leases made to him by his tenants ;

" That Hubbard and Templeton, on and after the sale from

White, resided upon the land and occupied the houses formerly occupied by White and family, claiming the whole tract under the deed from White, and exercising acts of ownership over portions thereof until the sale from Templeton to Hubbard, and afterwards Hubbard occupied in the same manner, and claimed to the same extent, up to and after the adverse entry of the tenth of December, 1852, and that the other plaintiffs, by regular mesne conveyances from Hubbard, have an undivided interest in said premises, then the plaintiffs are entitled to recover.

" 2d. Any entry upon said tract subsequently to the occupation and inclosure by White, by persons not owning or having permission from the owner in fee, does not impair or invalidate White's possession as against the defendants in this cause.

" 3d. Occupation of a part of a tract of land, the extent of the tract being defined by distinct monuments of boundaries, whether the same be natural or artificial boundaries, carries the possession to the whole tract.

" 4th. You are instructed that the deed from the city by the Mayor, which has been offered in evidence, did not convey to the United States any present title to the lands in question, and vested no right to the possession thereof in the United States.

" 5th. You are instructed that the United States have no title or right to the possession of the lands in controversy in virtue of any supposed reservation thereof.

" 6th. You are entirely to lay out of view the fact that a building, used as a United States Marine Hospital, now stands upon the premises of which a recovery is sought, and you are to regard and view the title of the plaintiffs in the same manner as if no erection had been constructed upon said premises. In other words, the fact that the lots are improved is not to influence your deliberations or decision to any extent whatever.

" 7th. Your deliberations are not to be influenced against the plaintiffs to any extent whatever by the fact that the defendants set up title in the United States, unless such a title be satisfactorily proven; nor are the United States, upon a question of title, in any more favorable position than a private individual."

The Court declined to give said instructions, plaintiffs excepting.

The jury found a general verdict for defendants; and to the first special question submitted to them, answered: "None of them were." Judgment for defendants; plaintiffs appeal.

*S. W. Inge,* for Appellants.

I. The Ordinance of the Common Council and deed from Brenham in pursuance thereof did not tend to support the issue of title in the defendants, and were, therefore, irrelevant. Neither the Common Council nor Brenham had power to convey, by way of gift, the title of the city. No such power is found in the charter; they had no power to sell or lease, except at public auction, and no power to give away the property of the city in any manner. (*Smith* v. *Morse,* 2 Cal. 527; 2 Kent, 298; 4 Hill, 76, 92; City Charter Acts of 1851, 366; *Hart* v. *Burnett,* 15 Cal.) The Commissioners of the Funded Debt were limited to the same manner of disposition, and the Legislature has never conferred upon any corporation or other trustee the power to convey the title of the city privately and without consideration, or in any other manner than by sale at public auction. (Acts of 1851, 390.) The legislative approval gave effect to the Van Ness Ordinance. (*Hart* v. *Burnett,* 107.)

II. The Court erred in refusing to charge the jury that White's possession was sufficient to maintain ejectment. (4 Cal. 94; 6 Id. 172, 649; 9 Id. 427; 5 Id. 87, 249, 266; 10 Id. 22.)

Hubbard and Templeton entered under a deed with specific boundaries, and were entitled to the possession of the whole tract, under the rule recognized in 12 Cal. 560. When White entered, and up to the time of the confirmation of the Van Ness Ordinance by the Legislature, this land was the property of the city. The effect of the Act of Confirmation is, to vest the title of the city in the plaintiffs, who deraign from White. (*Hart* v. *Burnett.*) The Court, in giving the instructions asked for by defendants, construes the ordinance to operate in favor of the last possession, instead of the first; and the most recent trespasser, instead of the original *bona fide* occupant. Both parties claimed under the city and by virtue of possession.

The Court instructed the jury that White, having claimed the land as Government property, could not afterwards correct the mis-

take, and show that he had acquired a good title from the real owner. This is not law. (*Coryell* v. *Cain*, 16 Cal. 567.)

The instruction asked for by plaintiffs, on the alleged reservation, should have been given. There was never an attempt by the Government to reserve this land; and no attempt could have been effectual, as it was the property of the city and beyond the reach of the Federal Government. (McAllister Reports.)

The several other instructions asked for by the plaintiffs and refused should have been given; and all the instructions asked for by defendants and given by the Court should have been refused.

The United States have no title to the property; and the real parties in interest are the plaintiffs, who claim under the Act of Legislature, confirming the Van Ness Ordinance and purchases at Peter Smith sales.

The finding of the jury upon the fact of possession submitted by the Court was in contradiction to the evidence, and should have been set aside, and a new trial granted. (*Bagley* v. *Eaton*, 8 Cal. 160.)

III. As to the Van Ness Ordinance, possession and the right of possession.

All the parties now in possession, adverse to appellants, entered without color of title, or under worthless titles, and now claim under the Van Ness Ordinance; they are of three classes: 1st, Colton grantees; 2d, purchasers under Peter Smith judgments; 3d, respondents, who are in possession without color of title.

The deed from Brenham is absolutely void, and gives no color; but if it did, prior possession is evidence of title, and cannot be made to yield to mere color. (5 Cal. 249, 266.)

It is not denied that White's possession was prior in time to those who hold adversely; and as none can rely upon paper title, and all must fall back upon possession, priority is superiority. (See cases *supra*.)

When possession is in one person and the right of possession in another, the Van Ness Ordinance operates in favor of the latter. It goes back to the oldest right of possession, and operates as a grant in favor of the party in whom such right is vested. Its language is : " Parties in the actual possession * * on or before the first day of January, 1855."

Hubbard *v.* Sullivan.

When the possession has been lost, it not only vests the right of property in the party having the right of possession, but also gives a remedy for the recovery of the lost right.   It reads: " Provided such possession has been continued up to the time of the introduction of this ordinance ; or, if interrupted by an intruder or trespasser, has been or may be recovered by legal process." Although not necessary to this case, it is contended that this clause gives a remedy when it had been lost by lapse of time.

Suppose White had maintained his possession of the whole tract up to the introduction of the ordinance in the Common Council, can it be denied that his title would be perfect under the ordinance ? His vendees, however, retain possession of only a part ; is not their right as perfect to the part of which they have been deprived by the entry of the several classes of contestants above referred to, as that part of which they were so fortunate as to preserve the possession ?   The mere accident of losing or preserving the possession does not and should not in justice effect the question of right.

IV.   The act confirming the ordinance operates upon the property of the city, whether the legal title be in the corporators or the Commissioners of the Funded Debt.

It is said, title in the Funded Debt Commissioners shows title out of appellants ; to which I reply :

1st. Outstanding title has not been plead.   (10 Cal. 22.)   2d. The act confirming the Van Ness Ordinance (not the ordinance *proprio vigore*) conveys to the party having the right of possession, as well the property vested in the Funded Debt Commissioners as that remaining in the city.  The one was as much under the control of the Legislature as the other.   (*Hart* v. *Burnett* ; *City* v. *J. C. Beideman.*)   And both classes of land are equally within the policy of the act ; but neither the Common Council nor Mayor, nor both in concert, could convey lands vested in the Commissioners.

*Calhoun Benham*, for Respondents.

I.   The Court will not set aside the judgment ; because there was a special finding upon conflict of testimony as to the fact of prior possession, with nothing kept from the jury proper for their consideration, nor anything submitted to them not proper for them

to have considered, either in the testimony, or the Judge's charge, or instructions prayed.

The plaintiffs claimed by virtue of prior possession. They offered no paper title, nor evidence of anything but possession. Defendants denied possession, and offered evidence to show that White never had any. Upon this issue, the Court ordered the jury to find specially whether White, or Hubbard and Templeton, or either of them, were in actual possession prior to the possession taken by the United States at the time of preparing to erect the Marine Hospital. The jury found a general verdict for defendants, and answered this special question in the negative.

II. Upon the general verdict, aside from the special finding, the judgment must stand; the verdict being neither against law nor evidence.

It is said that the Ordinance of the Common Council of the city of San Francisco, of Dec. 10th, 1852, authorizing a conveyance of the premises to the United States, and the deed under it by the Mayor, dated Dec. 11th, 1852, were irrelevant; because,

First. The title to the premises was in the Commissioners of the Funded Debt of the city of San Francisco at the date of the deed, and could not be disposed of by the ordinary authorities of the city.

Second. The deed did not consummate a sale at auction—the only mode by which the city could dispose of its property, according to the sixth section of the sixth article of the City Charter of 1851. (Session Acts, 1851, 366.)

If the deed to the United States is void, and so irrelevant, the argument which proves it is so is suicidal.

If the title at the date of that deed was in the Funded Debt Commissioners, and the premises were conveyed to them on the twenty-fourth of May, 1851, it remains in them by legal intendment, unless the plaintiffs have shown that they themselves have received it; and the defendants being in possession, under color of title, the plaintiffs cannot recover.

There is no pretense that the plaintiffs have received the title from the Funded Debt Commissioners, except by force of the Van Ness Ordinance and the statute adopting it. And neither the one nor the other of these has any application to property already conveyed on the first of January, 1855.

If the Van Ness Ordinance could convey the interest of the city in the premises, reversionary upon the payment of the city's debt, then the Ordinance of December 10th, 1852, and the Brenham deed could also convey, and did convey, to the United States. (*City* v. *Beideman*, 17 Cal.)

By the affirmative showing of the plaintiffs, the title is in the Funded Debt Commissioners, if not in the United States. There is no force in the suggestion that the premises were not sold to the United States at auction.

*Non constat* it was not, if transferred by sale at all, duly sold at auction. There is no evidence on the subject, and the sale will be presumed to have been regularly made. It is not a sale, however; it was a gift. It is true, the consideration of one dollar is expressed, but the passing of a money consideration is inconsistent with the ordinance recited in the deed; at least, the deed, in expressing a consideration, goes beyond the ordinance. The ordinance says nothing of a consideration, and the Mayor was not authorized to insert it. His doing so cannot change the character of the instrument. As a deed of gift, it can be supported, in view of its eleemosynary object, upon the general powers of the corporation. As a sale, it might be invalidated by proof of its not having been made at auction.

To hold that the United States must buy at auction would deprive them of the privilege of selecting the property they might wish for purposes of a public nature.

They were authorized to purchase—as applied to a given piece of property; it might well become a barren privilege if they must buy at auction.

The general powers of the city of San Francisco, under the charter of 1851, were conferred by the first section of that act. (Session Acts, 366.) They comprised the power " to sell or otherwise dispose of the city property for the common benefit."

If the Brenham deed cannot be supported because it was not the consummation of a sale at auction, it is good, in view of the benefit to the city derived from the proximity of the hospital to the port, as a reservation for municipal purposes, and is authorized by

the charter, and forever exempted from execution. (Charter of 1851; Funding Act, sec. 11, 390.)

This view of the case—even if the Funded Debt Commissioners had the title, which we deny, because the deed to them by the Commissioners of the Sinking Fund was void—harmonizes everything. It shows a right of possession in the United States, which, if not a fee simple as set up in the answer, may yet be proved under that allegation; it shows, also, that the premises, through the agency of the United States and their officials, were occupied by the city herself January 1st, 1855, and could not, therefere, have been the subject of the Van Ness Ordinance.

Besides, it establishes a direct privity and connection between the defendants and the outstanding title proved—a circumstance not necessary under the decisions of this Court, but mentioned out of deference to what I consider a misapprehension of *Doll* v. *Meador* (16 Cal. 295).

The Van Ness Ordinance could do White's alleged possession no good, because: 1st. It did not apply to lands the title to which was in the United States, by deed, as the premises were by the Brenham deed. 2d. It did not apply to lands conveyed to the Funded Debt Commissioners, in whom the title rested, if not in the United States by the Brenham deed. 3d. Because his possession was lost in fact when his fence was no longer kept up, and he unable to recover upon it alone. 4th. Because his possession was abandoned, and he could not recover upon it alone. 5th. Because it inured to the benefit of the United States, if to that of any one, since they were in possession January 1st, 1855, and no one was able to recover the possession from them, unless the city herself could do so.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

Ejectment for the United States Marine Hospital. It is not important, in the view which we have taken of this case, to consider whether the deed of Brenham, as Mayor of San Francisco, conveyed to the United States the title of the property sued for. It may safely be conceded, as possibly the truth is, that the city authorities had not power to convey any portion of the real estate

Hubbard v. Sullivan.

of the corporation by way of gift.  But it seems to be conceded
—and the concession is necessary to the maintenance of the plaint-
iff's case—that the title to this property at the time of the passage
of the Van Ness Ordinance was in the city.  Now, whether the
city authorities had power to make a gift of this property or not, it
is certain that they had full power to control it, and to place it in
the keeping of any person; in other words, they might permit any
person to enter and hold the property at their discretion; and this
license is sufficient to protect the holder's possession against any
third person's claim.  If this deed from Brenham, made in pursu-
ance of the action of the Common Council, was not effectual for any
other purpose, it was effectual as a license.  The city, having
authority to make actual entry itself, could equally empower the
United States as its agent to enter; and it is not material, in this
aspect of the case, whether the possession of the plaintiff or his
predecessor had been disturbed before this time or not.  If the
property was in such a condition that the city might have assumed
the actual possession, as unquestionably it was, she having the legal
seizin might, at the time of the deed, have given to the United
States the right to enter upon the premises; and she did give that
right, whatever the effect otherwise of the deed of the Mayor.  By
and upon the passage of the Ordinance of 1855, and the confirm-
atory Act of 1858, the United States, holding under the city and
having actual possession, would be entitled at least to claim protec-
tion against the antecedent possession of the plaintiff or his prede-
cessor.  It is not necessary to decide that the United States have
title against the city.  If the Government holds under the city, by
contract or written consent of the city, and has no title by virtue of
the deed referred to, or the ordinance, the possession may be re-
garded as the possession of the city; but this is sufficient as against
the plaintiff's claim.  The Van Ness Ordinance in the proviso quoted
—" Provided, such possession has been continued up to the time of
the introduction of the ordinance; or, if interrupted by an intruder
or trespasser, has been or may be recovered by legal process "—has
no such application in favor of the plaintiff as he contends.  The
effect of this proviso is only to determine the right under the ordi-
nance as between the actual possessor and a former possessor whom

the first had deforced.  It has no application to the case of the city resuming possession of her own property, or what is the same thing, a possession held by her license and permission.  It would scarcely be contended that if the Plaza had been taken possession of by a trespasser, and he had been put off by a subsequent possessor, and the city had afterward entered or got possession, that she must yield to the first possessor.  The city was, at the time of the passage of the Van Ness Ordinance, in construction of law, in possession of this property by her tenant at will—if the United States got no title —and if the ordinance did not operate in favor of the United States, (a point we do not decide) certainly it does not operate to exclude her from her just rights, and to deny her the benefit of her present lawful possession of her own, from the mere fact that a long while before some one else was in unlawful possession of her property, and was put out unlawfully by a succeeding trespasser having no better title.

We have purposely waived a decision upon the question of the title of the United States, either under the deed or the Van Ness Ordinance, for the reason that the city is not a party to the record, and it is not necessary to a final disposition of the plaintiff's claim to pass upon the questions.

Judgment affirmed.


*S. W. Inge*, for appellants, filed a petition for rehearing, insisting: First, that the Court had decided the case upon the point that the deed of Brenham, as Mayor of San Francisco, to the United States was at least a " license to occupy ;" that this point was not presented by the pleadings, and was not argued by counsel, and that this Court should only consider errors raised by special exceptions.   Second, that, by the Act of May 1st, 1851, (Stat. 1851, 390) all the right, title and interest in and control over the property in controversy was divested from the corporate authorities and vested in the Commissioners of the Funded Debt, and that this was the only point discussed, and the point upon which the case was decided below; that, if the title passed by the Act of 1851 to the Fund Commissioners, then *all power* over the property was taken from the corporate authorities, and they could not " license to occupy,"

or exercise any control whatever, as this would conflict with the exclusive right of the Commissioners. Third, that the legal title remained in the Commissioners of the Funded Debt, with exclusive control, until the Act of 1858, confirming the Van Ness Ordinance; and that this ordinance granted the property to the possessors named therein, whether the legal title was in the city authorities or in the Commissioners; that the Mayor and Aldermen were mere agents or trustees, subject to the control of the Legislature, which could abolish the corporation and destroy their existence, or modify their powers, at its discretion, or place the management and control of the municipal lands in the hands of other trustees, as was done by the Act of May, 1851; that the Commissioners created by this act were also under the control of the Legislature, and were mere trustees to hold and manage and dispose of the lands of the city; that the Legislature could and did, by the confirmatory Act of 1858, divest the title of these Commissioners in favor of the possessors named in the ordinance; that no other than the sovereign power of the State could divest the title of the Commissioners, and hence that the attempt of Brenham to make a deed was void and inoperative for any purpose; that the leading object of the Act of May, 1851, was to prevent any such exercise of power by the city authorities; that the vendors of the plaintiffs were never trespassers, but were in possession first under the city, and with its tacit consent until May, 1851, and after that time under the Commissioners of the Funded Debt, and are now entitled as grantees under the confirmatory Act of 1858.

Upon this petition, BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

Petition for rehearing. In this case, the point decided by this Court, in its opinion, distinctly arose upon the facts. It is immaterial whether the point was taken in the argument or not, as the Court is bound to decide according to the law of the whole case, and not according to the views or reasoning of counsel. Indeed, in the case of *San Francisco* v. *Beideman*, (17 Cal. 444) we took the same ground as that in the opinion here. We do not see how the plaintiff can avail himself of the position that the Act of

1851 transferred this property to the Commissioners of the Funded Debt; for if this were true, the title would be in the Commissioners, and the plaintiff could not maintain his action; since, even if the Legislature had the power to divest this title by the act confirming the Van Ness Ordinance, that ordinance and the Act of 1858 only profess to give the occupants the right, title and interest of the city in the land so held.

But this deed to the Commissioners for the payment of the city debts would seem, upon general principles, to be a conveyance in trust for the purposes for which it was executed, leaving the residuary interest, after satisfying or discharging the trust, in the city; and it would seem that, subject to this right of the Commissioners —supposing it to exist—the city could still, without objection from third persons, control the subject of the trust. But it is clear that the plaintiff, claiming through the Van Ness Ordinance the right and title of the city, is not in a position to dispute that the city had, at the time of the passage of the ordinance, no title or claim to the premises.

Rehearing denied.